MARY E. McCollister, Appellant, and ESTELLA McFadden, Intervener, Appellee, v. Lizzie V. Yard *et al.*, Appellants.

Title to Real Estate: ACTION TO DETERMINE: BURDEN OF PROOF.
Where, in an action in equity against parties in possession of certain real estate under claim of ownership, the plaintiff claimed title to said property by descent, and asked that the title thereto, or of such portion thereof as the court might determine belonged to her, be confirmed in her, *held*, that the burden was upon the plaintiff to establish such facts as entitled her to the relief prayed. (1)

SAME. DESCENT: RIGHTS OF ADOPTED CHILD: ARTICLES RECORDED AFTER
MAJORITY    Where articles for the adoption of a minor child were not
filed for record with the county recorder until after the child attained
her majority, though in the lifetime of the adopting parent, *held,* that
the child was not entitled to take by inheritance from the adopting
parent, under the provisions of section 2310 of the Code, giving to
adopted children "upon the execution, acknowledgment and filing for
record," of the articles of adoption, the same right of inheritance as
exists in favor of children born in lawful wedlock.    (2)

Evidence of Lost Writing: FOUNDATION REQUIRED FOR INTRODUC-
TION OF SECONDARY EVIDENCE.    Where, in an action by a guardian in
behalf of his ward, the guardian testified that he had seen certain
articles of adoption pertaining to the ward, and had ordered them
filed by a firm of attorneys named, but that he did not have them in
his possession, and did not know where they were, and no effort was
made to show that the articles were not in the possession nor under
the control of the ward, *held,* that sufficient foundation had not been
laid for proof of the articles by the introduction of the record thereof
in the office of the county recorder.    Such articles are an instrument
affecting real estate within the meaning of sections 3659 and 3660 of
the Code; nor are they a paper "belonging to any public office, or by
authority of law filed to be kept therein," the record of which
would be admissible as original evidence under section 3702 of the
Code.    (3)

*Appeal from Johnson District Court.*—Hon. S. H.
Fairall, Judge.

Monday, January 22, 1894.

ACTION for the recovery of certain real estate,
together with the rents and profits thereof.    Estella
McFadden intervened.    From a decree in favor of the
intervener, and against the plaintiff, the plaintiff and
defendants appeal.—*Upon the plaintiff's appeal, affirmed;
on the defendant's appeal, reversed.*

*Baker & Ball* for appellants.

*Ranck & Wade* for appellees.

KINNE, J.—This is an action in equity, brought by
Mary E. McCollister, wherein she claims to be the
owner of a large amount of real property, also certain

rents and profits arising therefrom, all of which the defendant Welch, as administrator, holds in his possession. During the pendency of the plaintiff's action, Estella McFadden (by her guardian) intervened therein, claiming said property. The cases were tried as one, and were heard before Hon. James D. Giffen, judge of the eighteenth district, as a referee, who found for the defendants in the case of McCollister v. Yard et al., and for the intervener in the case of McFadden v. Yard et al. Judgments and decrees were entered in accordance with said findings, from which the plaintiff and defendants respectively appeal.

As many facts are admitted, we will first set out the same, so far as applicable to the plaintiff's case: *First.* That on March 1, 1862, one Thomas Hill entered into a deed of adoption formally adopting the plaintiff; that said deed was delivered, and was on January 28, 1867, duly recorded; and it is conceded that the same is in all respects regular, but it was not recorded until after the plaintiff, by marriage, had reached her majority, but was recorded during the lifetime of the adopting parent. *Second.* Said Thomas Hill died testate June 1, 1885, seised of the real estate in controversy. *Third.* By his will, his wife, Eliza D. Hill, if she survived him, was to become the absolute owner of all his property, both real and personal. *Fourth.* Eliza D. Hill died intestate January 16, 1886, and in possession and enjoyment of all said estate of Thomas Hill. *Fifth.* Neither Thomas nor Eliza D. Hill had issue. *Sixth.* The parents of said Eliza D. Hill were Francis H. Doran and Maria Van Aken, and they died, respectively, in 1840 and 1846. *Seventh.* The parents of said Eliza had issue other than said Eliza, one daughter, who died without issue about 1846, and one son, who disappeared, unmarried, about 1837, and has never since been heard from, and had no issue. *Eighth.* The defendants are a brother of Maria Van Aken, who

was the mother of Eliza D. Hill, and the children and grandchildren of the remaining brothers and sisters of Maria Van Aken, and claim the estate of Eliza D. Hill as heirs of the mother, only, of Eliza D. Hill. *Ninth.* Francis H. Doran, father of Eliza D. Hill, has no heirs living.

The plaintiff claims the property by virtue of her adoption by Thomas Hill, and as his heir. The defendants claim the property as heirs of Eliza D. Hill, and deny that the estate passed to the heirs of said Thomas on the death of said Eliza. The defendants, in an answer to the plaintiff's petition, aver that, after the death of Thomas and Eliza D. Hill, the plaintiff began an action in the district court of Johnson county, Iowa, contesting the will of said Thomas Hill, on the ground that he was of unsound mind, and that said will was procured through undue influence, and was void; that, after issue had been joined therein by these defendants, the parties to said litigation entered into an agreement whereby all the claims which the plaintiff had against the estate of either Thomas or Eliza D. Hill were settled by a payment to her of one thousand dollars which she still retains; and they claim she is now estopped from claiming any portion of the property in controversy. In a cross bill they also set up their claim to the property as heirs of Eliza D. Hill, and ask that title be quieted in them. The plaintiff, in a reply, admits the beginning of the action to set aside the will, but denies that she settled all claims she had against the estate of Thomas and Eliza D. Hill; says she agreed that a decree might be entered in said case on the payment to her of one thousand dollars, and that was all the agreement she made; that the alleged contract of settlement pleaded was without consideration, and is void, and, if made at all, was made under a mistake of fact, and belief that the defendants were entitled to the entire estate of Eliza D. Hill, whereas

such was not the fact. The defendants amended their answer, alleging among other things, that the plaintiff was not a legal heir of Thomas Hill, that she was never legally adopted by him; that the articles of adoption were not filed for record until after her marriage, and when she had become an adult, and at a time when she was not subject to adoption under the law. To this amendment the plaintiff filed a reply, averring that by her marriage she did not become an adult, and that the filing of the articles of adoption, and record thereof, during the lifetime of Thomas Hill, was a compliance with the statute. She further claims that the defendants can not be heard to question her right to the property under said deed of adoption because they have no interest in the property claimed by her. On the trial, the defendants objected to the introduction of the deed of adoption because it appeared that it was recorded after the plaintiff was an adult, and because the deed was not signed by Eliza D. Hill.

The case of the intervener, McFadden: The intervener, McFadden, joins the plaintiff, and claims one half of the estate of Eliza D. Hill. She claims to have been legally adopted by Thomas Hill on July 1, 1882, by articles duly entered into and filed for record. When adopted, her name was Estella Welton, and she afterward lawfully took the name of McFadden. The facts admitted as to the plaintiff, and numbered from 2 to 9, inclusive, are also admitted in this case. Under these admitted facts, and by virtue of her adoption, she claims one half of the property in controversy. The defendants, as to her claim, say that as to whether the deed of adoption referred to was executed by the said Thomas Hill and Lizzie Welton, or as to whether the signatures of said parties thereto are genuine, or as to whether the same was ever delivered, the defendants have neither knowledge nor information sufficient to form a belief, and can not admit the same; deny that

by said instrument she became or was the heir of Thomas Hill, or became entitled to the rights or privileges of a child of the blood of said Thomas Hill; deny that she has any ownership in the property in controversy; and deny that she is entitled to same, or any part thereof. Some questions touching the admissibility of evidence in this case may be referred to hereafter. It is sufficient now to say that it is claimed that no legal and proper evidence of the intervener's adoption was shown, and that, even if adopted, the statute conferred no rights upon her, except those existing between her and the adopting parent.

I. It is said that the defendants have no such interest in the property in controversy as to entitle them to question the plaintiff's right thereto. The plaintiff avers in her petition that the defendants claim to own the property; that they are in possession of it; that the defendant Welch, as the administrator of Eliza D. Hill, deceased, by some arrangement with the other defendants, is in possession and control of the estate, and enjoying the rents thereof. Her prayer is that the title to the real estate be confirmed in her, "or such portion thereof as the court should find belonging to her," etc. Whatever this action may be called, it is a proceeding in equity, and its purpose is to ascertain and fix the extent of the plaintiff's interest in this property. The burden is on the plaintiff to establish such facts as entitle her to a judgment and decree; otherwise, she can not recover; and in this view it is not necessary for us to give further attention to this branch of the case.

II. The material question in this case, as concerns the plaintiff, is, was she legally adopted by Thomas Hill. The only question raised touching the adoption is that the instrument of adoption was not filed for record until after the plaintiff had attained her majority; hence it is contended that the adoption was never completed.

Our statute relating to adoption provides that any person competent to make a will may adopt "as his own the minor child of another, conferring thereby upon such child all the rights, privileges, and responsibilities which would pertain to the child if born to the person adopting in lawful wedlock." Code, section 2307. Section 2308 of the Code provides, in substance, that the consent of the parents, if living, must be obtained to an instrument in writing; that it must be signed by the party or parties consenting, and state the names of the parents if known, the name of the child if known, and the residence of all if known, and declaring the name by which such child is thereafter to be called and known, and stating that such child is given to the person adopting for the purpose of adoption as his own child. Sections 2309 and 2310 of the Code read as follows: "2309. Such instrument in writing shall be also signed by the person adopting, and shall be acknowledged by all the parties thereto in the same manner as deeds affecting real estate are required to be acknowledged, and shall be recorded in the recorder's office in the county where the person adopting resides, and shall be indexed with the names of the parents by adoption as grantors, and the child as grantee, in its original name if stated in the instrument. 2310. Upon the execution, acknowledgment, and filing for record of such instrument, the rights, duties and relations between the parent and child by adoption shall thereafter in all respects, including the right of inheritance, be the same that exists by law between parent and child by lawful birth."

As we have said, the instrument of adoption in this case was not filed for record until after the plaintiff had attained her majority, but it was filed during the lifetime of Thomas Hill. In *Tyler v. Reynolds*, 53 Iowa, 146, the instrument of adoption was not filed for record until after the death of the adopting parent. It

was held that the right of inheritance "was a purely statutory right, and is therefore arbitrary, absolute and unconditional. Nevertheless, the provisions of the statute must prevail, although to do so, in some instances, is inconsistent with our views as to what constitutes natural rights, or justice and equity. Therefore, a child by adoption can not inherit from the parent by adoption, unless the act of adoption has been done in strict accord with the statute. The statutory conditions and terms are that the written instrument must be executed, signed, acknowledged, and filed for record. When this is done, the act is complete. * * * No rights were acquired until this was done, and neither was bound until then." This case was followed in *Gill v. Sullivan*, 55 Iowa, 343. In that case the instrument was never filed because of its being almost destroyed by an accident. In *Shearer v. Weaver*, 56 Iowa, 578, the adoption paper was not filed until about a month after the death of the adopting parent. Following the previous cases, it was held that the adoption had not been completed. The case of *Fouts v. Pierce*, 64 Iowa, 71, was a proceeding by *habeas corpus* to determine the right of custody of a child. No question of inheritance was involved. When Mrs. Fouts was a widow, she entered into articles of adoption with the defendant as to her child Ella. These articles were not filed for record, or recorded, until April 10, 1883. Ella's mother married the plaintiff, and in February, 1883, executed other articles of adoption, making the plaintiff the adopted parent. These articles were filed for record on the day they were executed. In discussing the case, the court propounds certain questions, answers to which were not necessary to a decision of the case, and which were not answered, but which might leave an inference that, the writer questioned the construction which had before that been placed upon the statute. The court has no doubt as to

the correctness of the holding in the cases heretofore referred to. It is true that the facts in the cited cases are not like those in the case at bar.

It will be observed that our statute makes provision only for the adoption of minors. Code, section 2307. Now, by the express terms of the statute, adoption is not completed until the instrument of adoption is executed, acknowledged, and filed for record. Until all these things are done, there is no adoption. It matters not that some of the requisites of the law are complied with, if others are ignored. A compliance with all is essential to fix the status of the parties as parent and child by adoption. Now, if, as we have seen, no one but a minor can be adopted, and if adoption can only be accomplished by the performance of certain acts, it follows that these acts must be performed, and the relations of the parties, as parent and child by adoption, fixed and established, during the period in which the subject of the adoption is capable, under the law, of being adopted. In other words, all the acts necessary to effect an adoption must be done during the minority of the child sought to be placed in this new legal relation. It seems to us that any other holding would not only be a clear departure from the requirements of the statute, but would, in effect, make the adoption of a child a matter largely resting in the court, without statutory restraint. Thus, if we say that an adoption is complete where the article, though executed during the minority of the child, is not filed until afterward, why may we not properly hold that it would also be effectual if the article of adoption related to one who, at the time it was entered into, was an adult? Now, when the article in this case was filed, when one of the steps essential to an adoption was taken, the plaintiff was in law an adult. She was not then capable of being adopted, under the statute. For five years she had ceased to be a subject of adoption.

No one, then, had a right to bind her by an article of that character, or to change her legal relations in that manner. Not then being capable of being adopted under the statute, acts relating thereto, which had been done when she was a proper subject for adoption, but which were incomplete, could not be completed, and thus rendered effectual, after she had attained her majority. After she had passed the period of minority, she was not within either the wording or spirit of the statute providing for the adoption of minors. We see no escape from the plain provisions of the law, and we discover nothing which would justify us in holding that, when the law provides that a minor may be adopted by complying with certain prerequisites, either the letter or spirit of the law is satisfied by the performance of some of the requirements after the subject of the adoption has ceased to be such a person as the statute renders capable of adoption. See *Long v. Hewitt*, 44 Iowa, 367.

Counsel for the plaintiff cite *Sewall v. Roberts*, 115 Mass. 262, and *Abney v. De Loach*, 84 Ala. 393; 4 S. Rep. 757. In the first case the probate court, on the petition of Roberts and wife, entered a decree permitting them to adopt the child, as provided by statute. No guardian *ad litem* was appointed to represent the child. The court, without determining as to whether such a guardian was necessary in such cases, held that if one was necessary, still, a failure to appoint one would not render the adoption invalid, but it would be avoidable only at the option of the child. The case did not involve the question here presented. In the Alabama case the statute required a declaration of adoption to be executed, acknowledged, and filed and recorded before the relation of parent and child by adoption was created, and the child made capable of inheriting. The paper was required to be filed in the office of the judge of probate, and recorded on the min-

utes of his court.    The paper was properly executed, acknowledged, and filed, but the judge recorded it in a book kept by him for the record of deeds and wills.    It was properly held that his failure to record it in the required book did not avoid the instrument.    Clearly, that case is not authority in support of the plaintiff's contention in this case.    There the claimed invalidity was based on the failure of a public officer to do his plain duty.    No question arose as to the parties to the instrument having failed to properly deposit the paper in the judge's office.    The distinction between the two cases is well marked.    In the case at bar the parties to the instrument, who had the same in their possession or under their control, failed to discharge an absolute requirement imposed by law, in order that it might be effective as an article of adoption, while in the cited case the statutory requirement which was not complied with was a matter over which they had no control. The parties had done all that they could do, in fact all that the law required of them, and they could not be robbed of the benefit of their own acts by reason of the failure of a public official to discharge a duty imposed upon him by law.    The court cites and distinguishes the Iowa cases from that one.    The conclusion we have reached, that the plaintiff was never legally adopted, being an absolute bar to her recovery, we need not consider other questions discussed by counsel.    The judgment and decree as to her in the district court were right.

INTERVENER MCFADDEN'S CASE.

III.    The intervener, McFadden, was found by the referee to have been legally adopted about June 24, 1882, by Thomas Hill.    This finding was approved by the district court, and counsel for the defendants insist that the finding is not warranted by the evidence.    The petition of intervention sets out the instrument of adoption, with all proper averments as to its execution

and recording. The answer denies the execution of the instrument, denies the genuineness of the signatures thereto, denies its delivery, denies that by said instrument the intervener became or was entitled to the rights and privileges of a child of the blood of Thomas Hill, denies the intervener's right to the property, and admits certain paragraphs of the petition, not material to the matter now under consideration. No express denial of the recording of the instrument is in terms made, but the denial of the execution of the instrument must be held as a denial of the drawing and recording of the instrument, as, if not executed, it could not have been drawn and recorded. We have no doubt that the denials were broad enough to require from the intervener the formal proof made necessary by law before she could introduce the record of the instrument of adoption.

James McFadden testified that he was the guardian of the intervener, and filed the petition in this case; that he did not have in his possession the deed of adoption made by Thomas Hill, adopting Estella McFadden, formerly Estella Welton; that he did not know where it was; that he saw it, he could not say what year; that it was about the first of July, with reference to the time it was made. This evidence was objected to as incompetent and immaterial, and because he would not be likely to have the instrument. He then testified that he did not know that it was recorded, but had instructed Charles Baker and Mr. Beaty to have it recorded. This evidence was objected to as incompetent and immaterial, and because not the best evidence. The intervener then offered in evidence the record of the deed of adoption and the index of the same. This was objected to for the same reasons, and also because no foundation had been laid for the introduction of secondary evidence, and it was not proven to be the record of the deed of adoption which was executed by

the parties, and did not purport to be signed by Eliza D. Hill, under whom the defendants claim title, and would not vest the heirs of Thomas Hill with title. The evidence was received.

This was all the evidence introduced as laying the foundation for the introduction of the record of the instrument. We think it was insufficient for that purpose. Our statute provides that "the record of such instrument or duly authenticated copy thereof, is competent evidence whenever the party's own oath or otherwise the original is shown to be lost, or not belonging to the party wishing to use the same, nor within his control." Code, section 3660. Section 3659 provides: "Every instrument in writing affecting real estate which is acknowledged or proved, and certified as heretofore directed, may be read in evidence without further proof." These two sections are found in the chapter on "Evidence" and under the subheading, "Instruments Affecting Real Property." If it should be conceded, for argument's sake, that an instrument of adoption is an instrument affecting real property, within the meaning of these sections, still the proper foundation for the introduction of the record was not laid. By these sections the record is made competent only when the original is shown to be lost, or not belonging to the party wishing to use it, or not within his control. Now, there was no showing that the instrument was lost. The witness simply testifies that he has not got it; has not seen it for years. He traced it into the possession of Charles Baker and Mr. Beaty, whom he instructed to have it recorded. It may, perhaps, be said that he has shown that it was not under his control, as he testifies he did not have it, did not know where it was, and that, when he last saw it, it was in the hands of other parties. See *McNichols v. Wilson*, 42 Iowa, 392. But we do not think it was shown that it did not belong to the party wishing to use it, or that she did not have

it, or that it was not within her control. The witness was guardian for the intervener. He was appointed but a few days before the suit was brought. He was merely a nominal, though necessary, party, by reason of her minority. He was not the real party in interest, in fact, wishing to use this instrument. For all that appears, he never had had possession or control of her papers relating to this property. It was for her benefit that the paper was to be used; she was the real party in interest in the litigation. So far as this record shows, she may have had this very paper in her possession or under her control. It seems to us that it would be going too far to say that a proper foundation was laid for the introduction of this record by simply showing that the guardian was not in possession of the paper, and did not know where it was, when no effort was made to show that it was not in the possession or under the control of his ward, the person for whom he was acting in the litigation. See *Williams v. Heath*, 22 Iowa, 521; *Kreuger v. Walker*, 80 Iowa, 735; *Oileman v. Kelgore*, 52 Iowa, 39. But it is clear that an instrument of adoption is not such an instrument as is contemplated by sections 3659 and 3660 of the Code. It is not necessarily an instrument "affecting real property," in the sense in which that language is used in those sections. It is an instrument affecting the legal status of the parties to it, but it does not describe real estate, nor affect it, within the contemplation of these sections.

Appellee contends that this record was original evidence; that it was primary; that no foundation need be laid for its admission; that it was admissible under section 3702 of the Code. That section reads: "Duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original record, or paper so filed." Now, the record introduced was not

of a paper belonging to a public office, nor was it of a
paper by law required to be kept therein. This adop-
tion paper was not required to be kept on file in the
recorder's office, nor did it pertain to or belong to a
public office. It was a private contract, entered into
under sanction of law, and required to be recorded.
The mere fact that the instrument must be recorded in
order to be effectual as an article of adoption did not
make the record of it original evidence. True it is
that, when recorded, the record of the paper is a public
record in the sense that it is open to the inspection of
any person interested therein; but it is not public in
the sense that the paper itself, from which the record
is made, must remain lodged in a public office. The
section relied upon relates to certified copies of an
original record, not of the original paper recorded. It
also applies as to papers which belong to a public
office, or are by law to be filed and kept therein. The
section has no application to a case like that at bar.

This case comes within the general rules requiring
the production of the best evidence of which the fact
to be established is susceptible. This rule is in force
in this state, except in so far as it has been modified by
statute.. *Williams v. Heath*, 22 Iowa, 521. The dis-
tinction between primary and secondary evidence is
still recognized, but, by sections 3659 and 3660 of the
Code, secondary evidence is made competent under
certain circumstances. Speaking with reference to the
steps necessary to be taken as preliminary to the intro-
duction of secondary evidence, a learned author says:
"But it seems that, in general, the party is expected to
show that he has in good faith exhausted, in a reason-
able degree, all the sources of information and means
of discovery which the nature of the case would natur-
ally suggest, and which were accessible to him." 1
Greenleaf on Evidence [15 Ed.], section 558. Meas-
ured by this standard, the intervener failed to lay the

proper foundation entitling her to introduce the record of the instrument of adoption. No evidence that the paper is not in the possession or under the control of the real party in interest; no showing that any effort was ever made to find it; no pretense that inquiry was made for it of Baker or Beaty, in whose hands the witness had last seen it. Surely, under such circumstances, the record evidence is not competent to establish the adoption of the plaintiff. There is, then, no evidence establishing the adoption of the intervener plaintiff, and the finding in that respect was not warranted.

There was some evidence as to admissions of Hill that he had adopted the intervener; but this phase of the question is not argued by counsel for the intervener, and, not being relied upon by them, we do not consider it. It not having been shown by proper evidence that intervener was adopted by Thomas Hill, it follows that she can not recover. Under these circumstances, we are not called upon to consider the many other questions raised.

On plaintiff's appeal, the case is AFFIRMED; on defendant's appeal, it is REVERSED.