HAMITER, Justice.
James Burnell Williams, in this cause, seeks to be recognized as the adopted son and sole heir at law of Felix Williams who died intestate on November 4, 1949.
The decedent was married twice. His first marriage was with Mary Ruffin, it having commenced in 1920 and having ended by a divorce in 1943. Several months thereafter he was married to Camille Carter. With her he lived in community until his death, they acquiring the property, real and personal, of which he died possessed.
On December 19, 1949 Camille Carter Williams opened the succession of Felix Williams and, pursuant to her petition, she was judicially declared to be the sole heir at law, as well as his surviving spouse in community. Further, the court formally ■ordered that she be placed in possession of all of the property left by the decedent, particularly that described in the judgment.
Some ten months later James Burnell Williams instituted the instant action against the said Camille Carter Williams, filing it in the mentioned succession proceedings, his petition alleging that Felix Williams adopted him in 1928, by a recorded act of adoption, and during decedent’s first marriage with Mary Williams. He prayed that he “be decreed the sole legal heir at law of the late Felix Williams, entitled as such to the entire estate left by his adoptive father, Felix Williams, being an undivided one-half interest in and to all the property of the community which existed between Felix Williams and Camille Carter Williams.” The interest thus sought, as shown by an inventory in the succession proceedings, is valued at $2316.02.
Answering the petition Camille Carter Williams challenged the validity of the alleged act of adoption, she praying that plaintiff’s demands be rejected. She further prayed in the alternative, in the event such act be declared valid, that “she be recognized and decreed the owner, in her own right, of an undivided one-half (Vz) of the community of acquets and gains existing as between her and her late husband, Felix Williams, decedent herein, and as usufructuary of the decedent’s entire estate.”.
During the trial there was introduced in evidence a notarial act signed by Felix and Mary Williams and Mary Knight which was passed on November 6, 1928 before R. F. Walker, Notary Public in and for East Baton Rouge Parish. Therein the first named two persons declared that “they do adopt as their child, an infant male, seven months old, unnamed, and they and each of them do by this Notarial Act select for, with the consent of the child’s mother, the name of James Burnell Williams, the last name, Williams, being the Christian name of appearers, and they do hereby accept said child and assume all the responsibilities attached to persons who adopt children as their own under the laws of this State.”
It was further recited in such notarial act that “Mary Knight, the natural mother of said child, and who of her own free will *876 and of her desire surrenders her child, named above, to the said Felix and Mary Williams, for their adoption and hereby surrenders to them all care, control and rights of whatever nature that she may have as a mother under the laws of this State. That she gives said child to the said Felix and Mary Williams for their adoption, for the reasons, that she is without a home of her own, and is unable to care for, .and raise said child, and support and educate it as should be done, all of which the said Felix and Mary Williams agree and obligate themselves to do by this Act of Adoption.”
After trial, specifically on July 16, 1951, the district judge rendered judgment dismissing the suit, he having concluded (as is .shown by his assigned written reasons) that the act of adoption was null and void for the reason that the child’s natural father was not a party thereto and, hence, the requirements of the then governing statute, Act 31 of 1872, as amended by Act 48 of ■1924, were not met, they having been that “ * * * if such child shall have a parent, or parents, or tutor, that the concurrence of such parent or parents, or tutor, shall be obtained and as evidence thereof, shall be required to sign said act * *
Plaintiff appealed from the judgment, contending that the district court erred (1) ■“in holding, that the father of an illegitimate child who had never lived with the mother of said child, and never • acknowledged - nor supported said child, was required to- sign the notarial act of adoption of said child in order for it to be valid” and (2) “in not recognizing that any defects in the act of adoption of James Burnell Williams were cured by Act 46 of 1932, Section 13.”
Supporting appellant’s second contention, obviously decisive of this cause, and making unnecessary a consideration of the quoted first contention, is our decision in Succession of Pizzillo, 223 La. 328, 65 So.2d 783, rendered April 27, 1953 or subsequent to the judgment of the district court herein.
In that case, as here, a surviving widow by a second marriage sought to set aside a notarial act in which her deceased husband, during his first marriage, had purportedly .adopted an illegitimate child. The act, dated March 1, 1930, was not signed by either the natural mother or father, although the former was known; and, because of that fact, the widow contended that the requirements of Act 31 of 1872, as amended by Act 48 of 1924 (the applicable law there and here) had not been satisfied and that the adoption was an absolute nullity. Finding it unnecessary to consider such-contention, we held that the attack was barred by the provisions of Section 13 of Act 46 of 1932, reading: “That any and all adoptions heretofore made, be and they are hereby confirmed, approved and validated, and that any action to set aside or annul any act of adoption made prior to the passage :of this act shall be prescribed after the ■lapse of six months from and after the promulgation of this act; but this prescriptive period shall apply solely to actions *878 having the purpose of setting aside and an.nuling acts of adoption by reason of such .adoption not having been effected by an authentic act, but by private act before •witnesses and acknowledged, or that all .necessary parties did not sign the act of adoption(Italics ours.)
Counsel for appellee herein takes cognisance of the decision in the Pizzillo case. But he suggests that it is inapplicable for the reason that the existence of the adoption act there, unlike the situation here, was-known or was the subject of ready ascertainment by reason of recordation. Thus, in brief, he states: “In that casé the court -correctly held the peremptive period of six months precluded an assault thereafter on .a known act of adoption — , or an act the-existence of which could have been readily .ascertained by reference to records in the registrar of conveyance office.”
The instant act of adoption, as -counsel points out, was not recorded until October 16, 1950, or a few days prior to the institution of this action. But the efficacy -of the above quoted statute of repose, as we appreciate its provisions, is not contingent upon recordation of the instrument or .actual knowledge of its existence. Moreover, the act of adoption in the Pizzillo case was not recorded — not even at the time the litigation commenced — as is disclosed therein by the pleadings of the adopted child and the evidence adduced.
It may be appropriate to observe that Section 1 of Act 13 of 1928 (not cited in the brief of appellee’s counsel) does make pro-vision for the recordation of acts of adoption. However, a proviso contained in Section 2 of that statute recites “that failure to so record any act of adoption shall not invalidate the adoption.”
On behalf of appellee it is further argued (in the alternative and if James Burnell Williams is declared to be the legally adopted son of the deceased entitled to inherit his share of the community) that she should be recognized as usufructuary of decedent’s estate, under the provisions of LSA--Civil Code Article 916, in as much as an adopted child stands in the same position as a legitimate one. The argument is without merit. What it overlooks is that the cited codal article, which establishes the usufruct, relates to an - inheritance by an “issue of the marriage with the survivor”; it has no application in a situation, as here, where the inheriting child is of decedent’s previous marriage. In Succession of Emonot, 109 La. 359, 33 So. 368, 370, which dealt with conflicting claims between the widower of the deceased and the latter’s daughter by a previous marriage, we said that, “ * * * as she left surviving her a child by a former marriage, and no children by the last marriage, the surviving husband had no usufruct of her estate, whether paraphernal or community * * Again in Billeaudeaux v. Manuel, 159 La. 146, 105 So. 256, 257 the following was stated: “No question of usufruct arises in this case because there was no issue of the *880 marriage between deceased and her surviving husband. Since Act .57 of 1910 [LSA-C.C. art. 915], it is only in intestate successions and where the deceased has left issue of the marriage with the survivor that the right of usufruct exists, C.C. art. 916.”
For the reasons assigned the judgment appealed from is reversed and set aside, and there is now judgment in favor of plaintiff, James Burnell Williams, and against the defendant, Camille Carter Williams, recognizing and decreeing him to be the adoptive son and sole heir at law of Felix Williams, entitled as such to the estate of said decedent, all as prayed for by him. Costs shall be paid out of funds of the succession.