McBRIDE, Judge.
We are confronted with the question whether an act of adoption of a major by a major (LSA-R.S. 9:461, as amended by Act No. 514 of 1952) not registered with the Clerk of Court of the parish in which the act was executed, in accordance with the literal terms of paragraph (2) of the above statute, until after the death of the adopter is valid.
Mrs. Claudia Irene Marquette, widow of Steve D’Asaro, died intestate in New Orleans, December 10, 1963, and her succession proceedings were commenced in the Civil District Court for the Parish of Orleans; decedent’s sister, Mrs. Lena Marquette Fernandez, applied for appointment as administratrix, which application was opposed by Steve M. D’Asaro (born Steve Whidden, son of Mrs. Lena Marquette Fernandez from a former marriage) who claimed that he was the adopted son and sole heir of decedent and as such is entitled to be administrator. He prayed that his nominee (Koch) be so appointed. *393 (See LSA-C.C.P. art. 3098, par. (2).) Mrs. Fernandez interposed an exception of no right of action to D’Asaro’s opposition and to his prayer for Koch’s appointment, grounded on the theory that decedent never legally adopted Steve M. D’Asaro since the act of adoption had not been registered in accordance with LSA-R.S. 9:461, as amended, until after the death of the adopter.
The trial judge overruled said exception and dismissed the application of Mrs. Fernandez for appointment, from which judgment she has perfected the appeal now being considered.
Per authentic notarial act on May 12, 1961, before John A. Sanchez, Jr., Notary Public for the Parish of Jefferson, Mrs. Claudia Marquette, widow of Steve D’Asaro, of the full age and a resident of the Parish of Orleans, purported to adopt Steve Whidden, her nephew, who was also of the full age and a resident of the Parish of Orleans “as though he were her child”; in the act Whidden consented to his adoption and declared “he wishes and by these presents does change his name to Steve D’Asaro.'” See LSA-R.S. 9:462. The act was not registered anywhere until the early part of 1963 when an attorney representing D’Asaro had it registered in Adoption Book 2, Conveyance Office for the Parish of Orleans. The act was not registered with the Clerk of Court of the Parish of Jefferson until December 24, 1963, approximately fourteen days after the death of the adopter (decedent) .
In speaking of adoptions, the Supreme Court in Green v. Paul, 212 La. 337, 31 So.2d 819, said:
“While adoption is a practice of grant antiquity, having been known to the. Egyptians, Babylonians, Assyrians, Greeks and ancient Germans and having been recognized in the civil law before the time of Justinian, there is no adoption at common law and, in the United States it exists only by statute (2 C.J.S., Adoption of Children, § 2 p. 370). It has been firmly settled by this court that adoption is a creature of statute; that, this being so, it is only what the law makes it and that, to establish the relation, the statutory requirements must be strictly carried out, otherwise, the adoption is an absolute nullity. See Succession of Pizzati, 141 La. 645, 75 So. 498; In re Brands’ Estate, 153 La. 195, 95 So. 603; Succession of Brand et ux., 162 La. 880, 111 So. 267; State ex rel. Monroe et ux. v. Ford, 164 La. 149, 113 So. 798; Hardy v. Mobley, 183 La. 668, 164 So. 621 and Owles v. Jackson, 199 La. 940, 7 So.2d 192.”
Adoption is defined to be the establishment of the relationship of parent and child between persons not so related by nature, and the act of adoption creates a status rather than a contractual relationship. 2 C.J.S. Adoption of Children, § 1, pp. 367 and 368; Green v. Paul, supra; Succession of Thomson, 221 La. 791, 60 So.2d 411.
Adoption was known to the law of France. An English translation thereof shows that the official edition of the Code Napoleon published at Paris in 1804 contains provisions concerning the adoption of one person by another (see Arts. 353 through 360). Procedure for adoption was minutely outlined; the matter was required to be finally submitted to the Court of Appeal, which, without assigning reasons, shall pronounce: “The judgment is confirmed,” or “The judgment 'is reversed; in consequence there is ground,” or “There is no ground for adoption.” ' Article 359 required that within three months after the confirmation of the judgment, the'adoption shall be enrolled on the requisition of one or the other of the parties on'the register of the civil power of the place where the adopter is domiciled and the adoption “shall remain without effect unless it be enrolled within this interval.” At the present time (see nfw Art. 367) *394 the transcription is made upon the petition of the avoué or of one of the parties. Plañid, Vol. 1, p. 884.
In 1917 the Supreme Court decided Succession of Pizzati, 141 La. 645, 75 So. 498, holding therein that there was no law in Louisiana authorizing the adoption of a major despite LSA-C.C. art. 214 which provided that any person may adopt a major as well as , a minor. The Court pointed out that said article not having made provision for the mode of effecting the adoption of a major, it was defective and inoperative. The Court said:
“The legal status is a result of the adoption; it is not the adoption itself, for the adoption is the act, the outward manifestation or ceremonial, by which it is brought, .about. A statute which authorizes the result to be brought about, but does not provide the means of bringing that result about, of, in other words, authorizes adoption without providing the means of effecting it, is defective, and can have no operation. Such a statute is in the same condition as those constitutional provisions which, for the same reason of not having provided the means of being carried in effect, are held not to be self-operative. * * * ”
The bridge was gapped by Act 109 of 1924 which provided for the adoption of adults, the prescribed formalities being an authentic act signed by the parties which “shall” be recorded in the Mortgage Records of the parish wherein the person adopting resides.. Act 13 of 1928 provided that all acts of adoption shall be filed with the Clerk of Court of the parish where the act of adoption was executed. Act 46 of 1932 (as amended by Act 44 of 1934) placed adopted persons in two categories (those under 17 and those 17 or over)in the case of persons 17 years old, or more, the formality was that the adoption should be by authentic act or by private act duly acknowledged, signed by the parties; no recordation or registration was required under Act 46 of 1932 or Act 44 of 1934.
Then came Act 169 of 1940 which merely required a “notarial act” of adoption to be registered with the Clerk of Court of the parish in which the act is executed; said provisions were carried over into the LSA-Revised Statutes of 1950 under Section 9:461, which in turn was amended by Act 514 of 1952, and as a result LSA-R.S. 9:461 now prevails in the matter of the adoption of persons over 17 years of age and provides as follows:
“Any person above the age of twenty years may adopt any person over the age of seventeen years, according to the following conditions, limitations and procedure:
“(1) That the adoption shall be effected by the execution of a notarial act signed by the adoptive parent or parents and the person' to be adopted, where the person to be adopted is a major or an emancipated minor, * *.
“(2) That the notarial act executed in accordance with paragraph (1) of this Section shall be registered with the clerk of court of the parish in which the act is executed, except in the parish of Orleans, where it shall be registered with the register of conveyances for the parish of Orleans. The clerk of court or register of conveyances shall record all such notarial acts of adoption, except as otherwise provided in paragraph (1) hereof, in a separate book kept by him for the purpose, and shall keep an index of the same under the names of the adoptive parents and the person adopted.”
Thus, the current law which provides that the “notarial act” shall be registered with the Clerk of Court of the parish in which the act is executed is traced to Act 169 of 1940.
The Supreme Court in Succession of Thomson, supra, held that once an act of *395 adoption was entered into, it could not be revoked by the parties on the ground that it was a “mistake” and the parties wished to withdraw therefrom. In said case the Court also held that whereas Act 169 of 1940 required that the adoption be by notarial act, such act need not be signed by witnesses. A notarial act was, therefore, distinguished by the Supreme Court from an authentic act which under LSA-C.C. art. 2234 is defined as one executed before a notary public or other officer authorized to execute such functions in the presence of two witnesses.
The only case in Louisiana in which the question of registration was even remotely involved was in Succession of Williams, 224 La. 871, 71 So.2d 229, wherein an act of adoption passed in 1928 (under Act 13 of that year) was not registered until 22 years later, a few days prior to the institution of the action. The Court held that the application of Act 46 of 1932, § 13 (a statute of repose) was not contingent upon recordation of the adoption or actual knowledge of its existence. The Court in passing noticed that a proviso contained in Section 2 of Act 13 of 1928 states that a failure to record any act of adoption shall not invalidate it.
Our attention has not been called to a single case, nor has a diligent research revealed any wherein an appellate court of this state has ever relaxed the laws providing for the adoption of a person over 17 years. Appellee argues that registration of the act is not sacramental and is but an idle ceremony. But none of the cases he cites have any application to the question under consideration nor could they be the predicate for a decision in the instant case.
The right to adopt and to be adopted is not a natural right at all but flows purely from statute which perforce must provide arbitrary procedure. The method for the adoption of persons over the age of 17 set forth in LSA-R.S. 9:461 is absolute and unconditional. Note the language used in the opening sentence of LSA-R.S. 9:461:
“Any person above the age of twenty years may adopt any person over the age of seventeen years, according to the following conditions, limitations and procedure(Italics ours.)
Then follow the “conditions,” “limitations,” and “procedure,” i. e., paragraph 1, requiring the notarial act, and paragraph 2, providing that the act shall be registered with the Clerk of Court of the parish in which the act is executed.
In Succession of Pizzati, supra, the Supreme Court said:
“Adoption is not a contract, and is not of natural law at all. The breath of the Legislature creates it out of nothing. It is wholly and entirely artificial; it is precisely and exactly what the Legislature makes it. * * ”
In Louisiana the adopted person is considered for all intents and purposes as a legitimate child and forced heir of the adoptive parent. LSA-C.C. art. 214, as amended. Said article establishes the right of the adopted person or his lawful descendants to inherit from the adoptive parent or parents or the relatives of the latter by blood or by adoption, and the right of the adoptive parent or parents or their relatives by blood or by adoption to inherit from the person adopted or his lawful descendants in the same manner and to the same extent as if the person adopted were in fact the legitimate child of the adoptive parent or parents. In other words, upon adoption the laws regarding descent and distribution which were theretofore applicable to the parties are no longer effective because of the changed status in their relationship. Adoption is intended to and does confer substantial rights on the parties thereto and also to others.
In view of this, we cannot be persuaded that the current statute insofar as it provides for registration of the notarial *396 act of adoption in the parish in which the act is executed is merely directory.
Appellee argues that Mrs. Fernandez should not be heard in her complaint of the failure to register the act for the additional reason that she had actual knowledge of the adoption, in that she was cognizant that D’Asaro, who is her child, had changed his name and was living in the home of the decedent (his aunt) and had been living there for some years prior to decedent’s death.
Actual notice is immaterial and irrelevant to the issue. Some American authorities are to the effect that the object of registration of an adoption is to furnish some definite evidence of the fact that the transaction is genuine and in good faith, the registration to stand as a perpetual memorial of the fact that it was complete. See 2 C.J.S. Adoption of Children § 33, p. 414. According to the French law, however, it seems that the purpose of recordation was to give notice to persons affected. According to Planiol (Vol. 1, p. 884), new Art. 368, Code Napoleon, provides:
“Failure to transcribe within the legal delay no longer- results in the complete nullity of the adoption. It is sanctioned merely by the impossibility of setting it off against third parties (new Art. 368), * *
Whatever purpose the Legislature had in mind in providing that the act be registered in the parish in which it is passed, we do not know, but our opinion is that until the act is filed for record in such place, the adoption is not completed and D’Asaro cannot claim the status of a child of the decedent with the right to participate in her succession as her legal heir. A filing of the act for registration, we think, is just as important as the manner of execution or acknowledgment of the instrument. If this court could dispense with one of said requirements, it could just as well dispense with the other. If we were to uphold the purported adoption in the instant case, we would in effect be accomplishing a judicial repeal of that part of the statute requiring registration. Such is beyond our powers. If proper registration is to be deemed an unnecessary ingredient in the adoption before us, would such ever be necessary?
Appellee argues that if the act was not registered pursuant to law, then the notary public who passed the act which is authentic in form was the one guilty of the shortcoming which should not redound against the parties to the adoption. We cannot agree with this contention. As aforesaid, the Supreme Court in Succession of Thomson, supra, held that under LSA-R.S. 9:461, a notarial act would suffice in the matter of adoptions. The act in the present case happens to be authentic in form because it was passed by the notary public in the presence of two witnesses, but that fact would not make it a mandatory duty of the notary public who passed the act to register it. We know of no statute in this state which requires the officiating notary public to register an act of adoption, whether said act be “authentic” or “notarial” and, therefore, it necessarily became incumbent upon the parties to the act themselves to see to it that the adoption was completed and effected by making the proper registration thereof as required by statute. If anyone is at fault for not attending to the registration, it was the adopter and the adopted, both of whom were of full age of majority and are presumed to know the law.
Appellee’s position is that notwithstanding the registration was erroneously made in the Parish of Orleans, the law was substantially complied with and the adoption is valid. All we can say to that is that registration in the wrong place is the equivalent of no registration at all.
As already appears herein, between 1924 and 1928 acts of adoption of adults were required to be recorded in the mortgage records of the parish wherein the adopter resides; after Act 13 of 1928 acts of adop *397 tion were to be filed with the Clerk of Court of the parish where the adoption was executed; between 1932 and 1940 no recordation was necessary; subsequent to Act 169 of 1940 and up to the present time registration is required in the parish in which the act of adoption is executed. Thus, the Legislature several times made changes with reference to the place in which registration of the act of adoption was to be made and during one period entirely eliminated the necessity for any registration. Each change can be said to be material. In Succession of Thomson, supra, the Supreme Court said:
“ * * * Where the legislature deliberately amends an act or repeals an act and enacts a new statute changing the provisions of the prior statute by using words conveying a different meaning, the courts are not authorized to ascribe a meaning at variance with the plain import of the language used as that would be exercising legislative functions and would in effect operate as a judicial repeal. New York Life Ins. Co. v. Burbank, 209 Iowa, 199, 200, 216 N.W. 742; State ex rel. Mittman v. Board of County Commissioners of Greene County, 94 Ohio St. 296, 113 N.E. 831; State ex rel. Methodist Children’s Home Ass’n v. Board of Education, 105 Ohio St. 438, 138 N.E. 865; State ex rel. Oregon R. & Nav. Co. v. Clausen, 63 Wash. 535, 116 P. 7; State ex rel. George v. Seattle, 184 Wash. 560, 52 P.2d 360; 2 Sutherland Statutory Construction, Lewis 2d Ed. 893, Section 476, 25 R.C.L. 1047, Sections 275 and 276; 36 Cyc. 1142. * * *”
Appellee also advances the contention that the adoption was ultimately registered with the Clerk of Court for the Parish of Jefferson which was effective even though the adopter had departed this life. We do not think that such belated registration of the act gave validity to the adoption. At the time of registration, the legal heirs of Mrs. D’Asaro had been called to her succession under the doctrine of le mort saizit le vif, and no subsequent act of D’Asaro could deprive them of any vested rights.
“A child by adoption cannot inherit from the adopted parents unless the provisions of the statute in regard to adoption are strictly complied with. The instrument of adoption must not only be executed, signed and acknowledged, but also filed for record; and a filing for record after the death of one of the parties will be ineffectual.” —Tyler v. Reynolds, 53 Iowa 146, 4 N.W. 902.
It is also further contended on behalf of appellee that the adoption was complete in light of the word “effected” appearing in the sentence of paragraph (1) of LSA-R.S. 9:461 reading “[t]hat the adoption shall be effected by execution of a notarial act * * We do not think that such import should be accorded the word. All that is meant in the sense in which “effected” is used is that the adoption shall be caused by the execution of a notarial act when followed by the requirements of paragraph (2) with reference to registration.
The authorities from other jurisdictions are many and unanimous in holding that where recordation or registration of the adoption is necessary, a fulfillment of said requirement is essential else the adoption is without effect. Quoting from 2 C.J.S. Adoption of Children § 33, p. 414:
“Where it is prescribed by statute that instruments of adoption must be recorded, or that they must be recorded before the child reaches its majority, such requirements are mandatory and an adoption is not consummated until the instrument is properly recorded.

******
“Statutory requirements as to the time of recording must be observed, and accordingly it has been held that an instrument must be filed for record *398 during the minority of the adopted child and in the lifetime of the adopting party. * * *
“A deed or declaration is void if not recorded in the county prescribed by statute. * * * ”
We will not endeavor to enumerate all the authorities supporting the above views. However, a few should be pointed out and quoted from.
“The right of inheritance is purely a statutory right, and is therefore arbitrary, absolute and unconditional. Nevertheless, the provisions of the statute must prevail, although to do so, in some instances, is inconsistent with our views as to. what constitutes natural rights, or justice and equity. Therefore, a child by adoption cannot inherit from the parent by adoption unless the act of adoption has been done in strict accord with the statute.” Tyler v. Reynolds, supra.
“ * * * If the consent is required to be expressed in writing, it must be written. Hopkins v. Antrobus, 120 Iowa [21], 24, 94 N.W. 251. If the consent is to be given by both natural and foster parent, or guardian, it can be effectually given by no other person. Burger v. Frakes, 67 Iowa, 460, 23 N.W. 746, 25 N.W. 735. If acknowledgment and record are prescribed, these requisites must not be omitted. Tyler v. Reynolds, 53 Iowa, 146, 4 N.W. 902; Gill v. Sullivan, 55 Iowa, 341, 7 N.W. 586. * * * ” Sires v. Melvin, 135 Iowa 460, 113 N.W. 106.
“Granting, then, that there may be a legal adoption by deed, is the adoption complete without recording of the deed? There is no authoritative Pennsylvania Decision directly on the point. But in other jurisdictions where the statutes require that the instrument of adoption be recorded, it is held that the act is not complete until such condition is complied with: Tyler v. Reynolds, 53 Iowa, 146 [4 N.W. 902], This was held, also, in a case where the instrument was almost entirely destroyed by accident soon after it was executed, by reason of which it became impossible to record it: Gill v. Sullivan, 55 Iowa, 341 [7 N.W. 586], It was held in the same state that the instrument should be recorded while the child is a minor: McCollister v. Yard, 90 Iowa, 621 [57 N.W. 447]; and in the lifetime of the adopting party: Shearer v. Weaver, 56 Iowa, 578 [9 N.W. 907]. In Tyler v. Reynolds, the court said: ‘In the case at bar the instrument was incomplete until filed for record. Between the parties no rights were acquired until this was done, and neither was bound until then. Before this was done Philo Reynolds died, and no one had the power and authority to do what he failed to do, or to do what was required to be done to render the instrument valid or obligatory. Upon his death his natural heirs inherited. * * ’ * * * ” Evans’s Estate, 47 Pa. Super. 196.
“ * * * lie could have become such an heir only in the way provided by the statute, for heirship by adoption was not known to the common law. Eckford v. Knox, 67 Tex. [200] 204, 2 S.W. 372; Abney v. De Loach, 84 Ala. 393, 4 South. 757; Kennedy v. Boroh, 226 Ill. 243, 80 N.E. 767. The statute provided that ‘any person wishing to adopt another as his legal heir may do so by filing in the office of the clerk of the county court of the county in which he may reside, a statement in writing, by him signed and duly authenticated or acknowledged, as deeds are required to be, which statement shall recite in substance that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office.’ Sayles’ Stat. art. 1. It further provided that ‘such statement in writing, signed and authenticated or acknowledged, and recorded as *399 aforesaid, shall entitle the - party so adopted to all the rights and privileges, hoth in law or equity, of a legal heir of the party so adopting him.’ Sayles’ Stat. art. 2. It does not appear from the record before us that the requirements of the statute were complied with by L. C. Powell, or that he ever made an effort to comply with them. * * ” Powell v. Ott, Tex.Civ.App., 146 S.W. 1019.
“Under the provisions of the article, the filing of the instrument with the clerk is necessary to complete the act of adoption. Without the filing of the instrument as required by statute there would be no adoption and no legal rights conferred. The filing of the instrument constitutes the act of adoption and is not merely evidence of it.” Sanders v. Lane, Tex.Com.App., 227 S.W. 946.
“1. The Code of Alabama of 1896, § 367, provides that any person desiring to adopt a child 'may make a declaration in writing * * * which, being acknowledged by the declarant before the judge of probate of the county- of his residence, filed,’ and recorded, has the effect of adopting the child. If such a declaration shows on its face that the declarant did not reside in the county in which it was acknowledged, filed, and recorded, but in another county of the state, the proceedings were void, * * Monk v. McDaniel, 120 Ga. 480, 47 S.E. 931.
“Adoption is statutory. It was not known to the common law. By Code, § 10S00, it is only upon the execution, acknowledgment, and filing for record of an instrument in writing conforming to certain requirements of the preceding sections that the rights between parent and child by adoption, including the right of inheritance, shall be the same as between the parent and a child born in lawful wedlock. Long v. Hewitt, 44 Iowa, 363; Tyler v. Reynolds, 53 Iowa, 146, 4 N.W. 902; Gill v. Sullivan, 55 Iowa, 341, 7 N.W. 586; Shearer v. Weaver, 56 Iowa, 578, 9 N.W. 907; Bresser v. Saarman, 112 Iowa [720], 724, 84 N.W. 920; Lamb v. Morrow, 140 Iowa, 89, 117 N.W. 1118, 18 L.R.A.,N.S., 226; Riley v. McKinney, 167 Iowa 508, 149 N.W. 603; Horner v. Maxwell, 171 Iowa, 660, 153 N.W. 331; Webb v. McIntosh, 178 Iowa, 156, 159 N.W. 637; Young v. McClannahan, 187 Iowa 1184, 175 N.W. 26. See, also, In re Estate of Taggart, 190 Cal. 493, 213 P. 504, 27 A.L.R. 1360; In re Herrick’s Estate, 124 Minn. 85, 144 N.W. 455; Hood v. McGehee (C.C.) 189 F. 205; Id., 199 F. 989, 117 C.C.A. 664.” Morris v. Trotter, 202 Iowa 232, 210 N.W. 131.
“ * * * Held that, where an instrument of adoption was duly executed, and filed for record in the proper office, with intent that the clerk should immediately record it, the adoption was complete, notwithstanding the clerk failed to enter it of record.” J. M. Guffey Petroleum Co. v. Hooks, 47 Tex. Civ.App. 560, 106 S.W. 690.
“Where an adoption is relied upon as a basis for an inheritance, a full compliance with all the statutory requirements must be shown. * * * ” Gill v. Sullivan, 55 Iowa 341, 7 N.W. 586.
“ * * * we are compelled to hold the attempted adoption invalid because the instrument of adoption was not recorded. The adoption, to be valid here, must be valid in Iowa, and, as the highest court of that state has held that attempts similar to this are invalid under its laws, it must follow that this attempt is invalid also.” James v. James, 35 Wash. 650, 77 P. 1080.
For the above reasons, the judgment appealed from is reversed, and the exception of no right of action filed by Mrs. Fernandez is maintained and the opposition and application of Steve M. D’Asaro and his *400 nominee, A. Charles Koch, is dismissed at their cost and these proceedings are remanded to the lower court for further proceedings according to law; Steve M. D’Asaro is condemned to pay the costs of this appeal and also his costs in the lower court; all other costs are to be borne by the succession.
Reversed and remanded.